UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| FRANK HIGIRO, <br>     Petitioner, <br><br> v. <br><br> MICHAEL NESSINGER, *Warden, Wyatt Detention Facility*; DAVID WESLING, *Field Office Director, U.S. Immigration and Customs Enforcement, New England Field Office*; TODD M. LYONS, *Director, U.S. Immigration and Customs Enforcement*; KRISTI NOEM, *Secretary of the U.S. Department of Homeland Security*; and PAMELA J. BONDI, *Attorney General of the United States*, <br>     Respondents. | No. 26-cv-105-JJM-AEM |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Frank Higiro is currently in the custody of Immigration and Customs Enforcement ("ICE") officials at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. ECF No. 1 at 2. He brings this habeas petition under 28 U.S.C. § 2241, seeking immediate release from ICE custody or, in the alternative, a new bond hearing before an immigration judge ("IJ"). *Id.* at 10. Mr. Higiro challenges the constitutionality of his initial bond hearing at which the presiding IJ failed to consider alternatives to detention before denying his request for release on bond. *Id.* at 8-10. The Government opposes Mr. Higiro's petition, primarily arguing that this

Court lacks jurisdiction to review the IJ's decision under 8 U.S.C. § 1226(e).  ECF No. 5 at 10-14.

As explained below, the Court finds that Section 1226(e) does not preclude review of Mr. Higiro's claim.  Further, the Court finds that Mr. Higiro did not receive the due process he was owed at his bond hearing.  As such, the Court GRANTS Mr. Higiro's petition and ORDERS that the Government provide him with a new bond hearing at which the IJ shall consider alternatives to detention.

I. BACKGROUND

Mr. Higiro is a citizen of Rwanda who came to the United States in August 2015 on a student visa.  ECF No. 1-1 at 24[1]; ECF No. 5 at 3.  Within a few months of entering the country, Mr. Higiro filed an application for asylum and withholding of removal with U.S. Citizenship and Immigration Services ("USCIS").  *See* ECF No. 1-1 at 90 (displaying Mr. Higiro's application).

Since 2023, Mr. Higiro has had three encounters with law enforcement.  First, Mr. Higiro was arrested in Gorham, Maine for operating a vehicle under the influence ("OUI").  *See* ECF No. 1-1 at 176-78 (displaying arrest report).  This charge was later dismissed, and Mr. Higiro paid a ticket for the traffic violation of "imprudent speed."  ECF No. 6-2 at 2.

A few days later, Merrimack, New Hampshire police officers arrested Mr. Higiro and charged him with the offense of prohibited sales of alcohol to a minor.  *See*

---

[1] All page numbers correspond with those listed at the top of each individual ECF filing.

2

ECF No. 6-3 at 8-25 (displaying police arrest and incident reports). After failing to appear for his arraignment, Mr. Higiro was charged with disorderly conduct, an offense for which he was convicted. *See* ECF No. 1-1 at 161-62. However, the prohibited sales charge was later dismissed via *nolle prosequi*,[2] and the disorderly conduct conviction has since been annulled.[3]

Finally, a year and a half later, Mr. Higiro was arrested in Brunswick, Maine and charged with assault, criminal restraint, and furnishing liquor to a minor. *See* ECF No. 1-1 at 149-54 (displaying arrest report). Brunswick Police later closed this case after being unable to reach the alleged assault victim. *Id.* at 154. The police have said that they will continue to attempt to contact her and reopen the case once she is located. *Id.*

On February 20, 2025, ICE officers took Mr. Higiro into custody at his residence. ECF No. 1 at 5; ECF No. 1-1 at 167. The Department of Homeland Security ("DHS") formally initiated removal proceedings against him on February 27, 2025, and the agency charged him as being removable under 8 U.S.C. § 1227(a)(1)(C)(i).[4] ECF No. 1 at 5; *see also* ECF No. 1-1 at 166-68.

---

[2] *Nolle prosequi* is a Latin phrase meaning "does not wish to prosecute." *Zinicola v. Mott MacDonald, LLC*, No. 16-cv-542-JL, 2018 WL 1832408, at *4 n.64 (D.N.H. Apr. 17, 2018). Under New Hampshire law, "[t]he entry of a nolle prosequi serves as the functional equivalent of a dismissal." *Id.* (citing *State v. Allen*, 837 A.2d 324, 326 (N.H. 2003)).

[3] Under New Hampshire law, an individual whose "record of arrest, conviction, and sentence" has been annulled "shall be treated in all respects as if he or she had never been arrested, convicted, or sentenced." *Wolfgram v. N.H. Dep't of Safety*, 140 A.3d 517, 520 (N.H. 2016) (quoting N.H. Rev. Stat. § 651:5(X)(a)).

[4] Under this provision of the Immigration and Nationality Act ("INA"), noncitizens who fail to maintain the terms or conditions of the status under which

For a while, ICE held Mr. Higiro at the Cumberland County Jail in Portland, Maine. ECF No. 1-1 at 146. However, he was later transferred to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, where he remains detained today. ECF No. 1 at 5.

While in custody, Mr. Higiro requested a bond hearing before an IJ. ECF No. 1 at 6. Pursuant to 8 U.S.C. § 1226(a), a hearing was held in the Chelmsford Immigration Court. *Id.* After the hearing, the IJ denied Mr. Higiro's request for release on bond, finding him to pose a danger to the community. ECF No. 1-1 at 68 (displaying IJ's order).

In a memorandum, the IJ explained that she based her bond decision on the three encounters Mr. Higiro has had with law enforcement since 2023. *See* ECF No. 1-1 at 54-57. She found the police reports related to those encounters to be "sufficiently reliable to show a concerning and escalating pattern of [Mr. Higiro] engaging in dangerous and violent actions." *Id.* at 56. She concluded that, "based on the totality of the circumstances, including the nature, seriousness, and recency of [Mr. Higiro's] police encounters, … DHS met its burden to show by clear and convincing evidence that [Mr. Higiro] poses a danger to the community." *Id.* at 57.

Mr. Higiro appealed this decision to the Board of Immigration Appeals ("BIA"). ECF No. 1 at 6. However, the BIA affirmed the IJ's decision and dismissed Mr. Higiro's appeal. ECF No. 1-1 at 1-5. The BIA agreed that "DHS met its burden of

---

they were admitted (i.e., student status) can be ordered removed. *See Badose v. Garland*, 125 F.4th 1, 3 (1st Cir. 2024) (citing 8 U.S.C. § 1227(a)(1)(C)(i)).

4

proving by clear and convincing evidence that [Mr. Higiro's] release would pose a danger to the community" and "discerned no clear error" in the IJ's finding to that effect. *Id.* at 1-2.

The IJ then issued another order in which she denied Mr. Higiro's application for asylum and withholding of removal, and she ordered him removed to Rwanda. ECF No. 5-1 at 1-4 (displaying IJ's removal order). Mr. Higiro timely appealed that decision to the BIA, and that appeal remains pending at this time. ECF No. 1 at 6.

Mr. Higiro filed the instant petition, almost one year after he was first detained by ICE. ECF No. 1. The Government objects to Mr. Higiro's petition. ECF No. 5.

## II.   STANDARD OF REVIEW

Under Section 2241, federal courts may grant habeas relief to individuals who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner." *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

## III.   DISCUSSION

### A.   Mr. Higiro's Detention Under Section 1226(a)

The parties do not dispute that Mr. Higiro is detained under 8 U.S.C. § 1226(a). *See* ECF No. 1 at 7; ECF No. 5 at 6. This provision of the Immigration and Nationality Act ("INA") permits DHS "to detain certain [noncitizens] already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (citing 8 U.S.C. § 1226(a)). In Mr. Higiro's case, though an IJ

5

has ordered him removed to Rwanda, *see* ECF 5-1 at 3, this decision has not yet become a final order of removal because the BIA has yet to rule on Mr. Higiro's appeal of that decision. *See* 8 C.F.R. § 1241.1(a) (explaining that "[a]n order of removal made by the immigration judge … shall become final … [u]pon dismissal of an appeal by the Board of Immigration Appeals").

As such, the outcome of Mr. Higiro's removal proceedings remains pending. *Jennings*, 583 U.S. at 289. In fact, the outcome has remained pending for over a year, since DHS initiated removal proceedings against Mr. Higiro on February 27, 2025. ECF No. 1 at 5; ECF No. 1-1 at 166-68. Mr. Higiro still awaits a decision on his appeal of his removal order, which he filed with the BIA nearly nine months ago. ECF No. 1 at 6.

The First Circuit has previously recognized that, although "removal proceedings have an end point," the exact length of detention for those detained under Section 1226(a) "is impossible to predict and can be quite lengthy." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021). "Moreover, '[d]etention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded … even where an individual has prevailed and the Government appeals.'" *Id.* (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020)).

Importantly, this statutory scheme does not leave noncitizens without means by which to challenge their detention. The Fifth Amendment's Due Process Clause provides noncitizens subject to detention under Section 1226(a) with the right to seek review of their custody decision at a bond hearing (also known as a "custody

6

redetermination hearing") before an IJ. *Hernandez-Lara*, 10 F.4th at 41. At that hearing, the Government bears the burden of proving either: (1) "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or (2) "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.* If the Government fails to meet this burden, then bond or conditional parole must be granted. *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025). If, however, the Government does meet its burden and the IJ determines that the noncitizen must remain in custody, then the noncitizen may further appeal that decision to the BIA. *Hernandez-Lara*, 10 F.4th at 26 (citing 8 C.F.R. § 236.1(d)(3)).[5]

Since he was first detained, Mr. Higiro has already gone through the typical bond procedures contemplated by the court in *Hernandez-Lara*: (1) he sought review of his custody decision before an IJ; (2) the IJ opted to continue Mr. Higiro's detention because she found that the Government had met its burden of proving that he posed a danger to the community; and (3) Mr. Higiro appealed that decision, but the BIA affirmed the IJ and left the bond denial in place. *See* ECF No. 1 at 6. So, what recourse is available to Mr. Higiro, if any?

### B.     Whether the IJ's Bond Decision Was "Legally Insufficient"

---

[5] Notably, this BIA bond decision may not be further appealed to the relevant court of appeals. *See Romero v. Hyde*, 795 F. Supp. 3d 271, 278 (D. Mass. 2025). Rather, "a petition for a writ of habeas corpus, filed in the appropriate district court, is the only mechanism by which a noncitizen may seek judicial review of an IJ's bond decision." *Mayancela Mayancela v. FCI Berlin*, No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *4 (D.N.H. Nov. 18, 2025) (citing *Gudiel Polanco v. Garland*, 839 F. App'x 804, 805 (4th Cir. 2021) (per curiam); *Ben Halim v. Ashcroft*, 107 F. App'x 1, 6 (7th Cir. 2004)).

7

Mr. Higiro argues, among other things,[6] that the IJ's bond decision was "legally insufficient" because she failed to consider alternatives to detention before denying his request for release on bond. ECF No. 1 at 8-10. However, before it can proceed to the merits, the Court must take a brief detour to address the Government's contention that 8 U.S.C. § 1226(e) deprives the Court of jurisdiction to consider Mr. Higiro's claim. ECF No. 5 at 10-14.

1. Jurisdiction

This Court has already held that Section 1226(e) does not deprive it of jurisdiction to consider the type of claim that Mr. Higiro presents. *See Garcia v. Hyde*, No. 25-cv-585-JJM-PAS, --- F. Supp. 3d ----, 2025 WL 3466312, at *5 (D.R.I. Dec. 3, 2025); *Mavungo-Raymond v. Nessinger*, No. 26-cv-013-JJM-AEM, 2026 WL 161358, at *8 (D.R.I. Jan. 21, 2026); *Picado v. Hyde*, No. 26-cv-065-JJM-PAS, 2026 WL 352691, at *4-5 (D.R.I. Feb. 9, 2026).

To reiterate, Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any [noncitizen] or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). "[T]his provision of the INA only bars 'review of the Attorney General's discretionary judgment.'" *Picado*,

---

[6] Mr. Higiro also argues that the IJ legally erred in concluding that he posed a danger to the community. ECF No. 1 at 8-10. Because the Court ultimately concludes that the IJ should have considered alternatives to detention *before* making a determination as to dangerousness, the Court need not address Mr. Higiro's other argument.

2026 WL 352691, at *4 (quoting *Saint Fort v. Ashcroft*, 329 F.3d 191, 200 (1st Cir. 2003)). "It does not preclude, however, 'habeas jurisdiction over constitutional claims or questions of law.'" *Id.* (quoting *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017)); *see also Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 77 (3d Cir. 2019) (holding that, Section 1226(e) notwithstanding, courts sitting in habeas "retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis"); *Al–Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008) (holding that Section 1226(e) does not deprive courts sitting in habeas of "authority to review statutory and constitutional challenges"). Indeed, "district courts have jurisdiction to review [an] Immigration Judge's discretionary bond denial only 'where that bond denial is challenged as legally erroneous or unconstitutional.'" *Garcia*, 2025 WL 3466312, at *5 (quoting *Mayancela Mayancela v. FCI Berlin, Warden*, No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *6 (D.N.H. Nov. 18, 2025)).

Here, Mr. Higiro does *not* challenge the IJ's discretionary judgment. Rather, he argues that the IJ violated his Fifth Amendment Due Process rights by failing to consider "less restrictive alternatives" to detention "before imposing ongoing jail-like civil confinement." ECF No. 1 at 9-10. This is precisely the type of constitutional claim that belongs in federal court. *See Hernandez*, 872 F.3d at 987; *Quinteros*, 784 F. App'x at 77; *Al–Siddiqi*, 531 F.3d at 494. Assured of its jurisdiction, the Court will next turn to standing and exhaustion, two doctrinal points that the First Circuit has

9

instructed district courts to consider when evaluating "alternatives to detention" claims.  *Id.* at 252-57.

### 2. Standing and Exhaustion Considerations

Although the First Circuit has not yet squarely addressed whether due process requires an IJ to consider alternatives to detention at a noncitizen's bond hearing, the issue has come up quite a few times.  First, in *Hernandez-Lara v. Lyons*, the court cited favorably to a procedural due process protection imposed on IJs by the Ninth Circuit, requiring them to "consider a noncitizen's financial circumstances and alternative conditions of release during section 1226(a) bond hearings."  10 F.4th at 45 (citing *Hernandez*, 872 F.3d at 990-91).  Next, in *Doe v. Tompkins*, after a district court ordered an IJ to conduct a new bond hearing at which the Government bore the burden of proof, the First Circuit affirmed the decision but declined to address the other part of the court's ruling—which ordered the IJ to consider alternatives to detention—because neither of the parties had raised it on appeal.  11 F.4th 1, 2 (1st Cir. 2021).

Perhaps the closest the court came to taking up this issue was in *Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021).  There, the First Circuit reviewed another district court order that required IJs to "evaluate the [noncitizen's] ability to pay in setting bond above [the statutory minimum of] $1,500" and "consider alternative conditions of release, such as GPS monitoring, that reasonably assure the safety of the community and the [noncitizen's] future appearances."  *Brito*, 22 F.4th at 252. Though it did not reach the merits of this decision, the First Circuit provided guidance

on threshold considerations of standing and exhaustion that are relevant to "alternatives to detention" claims. *Id.* at 252-57.

### a. Standing

First, as to standing, the First Circuit acknowledged that the requirements of "traceability and redressability" are close questions. *Id.* at 254; *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (explaining that, to establish standing, plaintiffs must "clearly … allege facts demonstrating" that they: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision"). The court appeared skeptical of the Government's argument that "an IJ ought not consider … alternatives to detention if the IJ has determined that the noncitizen poses a danger to the community." *Id.* at 254. This would be "to put the cart before the horse, for it is easy to see how conditions of release might shape an IJ's determination as to whether a noncitizen poses a flight risk or danger to the community." *Id.* (citing *Fernandez Aguirre v. Barr*, No. 19-cv-7048 (VEC), 2019 WL 4511933, at *5 (S.D.N.Y. Sept. 18, 2019) (discussing court's earlier order that the IJ consider "whether non-incarceratory measures, such as home detention, electronic monitoring, and so forth, could mitigate any danger that [the noncitizen] posed to the safety of the community … *before* concluding that detention was appropriate" (emphasis in original))). The First Circuit explained that, "[i]f due process requires an IJ to consider alternatives to detention before making a determination about dangerousness or risk of flight, the

11

IJs in the petitioners' cases might well have reached different decisions as to … whether to release the petitioners on bond." *Id.* at 255.

Indeed, this is exactly what happened in Mr. Higiro's case. Nowhere in her four-page memorandum explaining her bond denial decision did the IJ reference or consider any alternatives to detention; instead, after some brief analysis, the IJ found that the Government had met its burden of proving dangerousness. ECF No. 1-1 at 54-57 (displaying IJ's memo). When Mr. Higiro appealed this decision to the BIA, he took specific issue with the IJ failing to consider alternatives to detention. *Id.* at 22, 28, 36-37 (displaying Mr. Higiro's brief in bond appeal). However, the BIA ultimately found no error in the IJ's failure to consider these alternatives because, as it flatly stated in its decision, "dangerous aliens are properly detained without bond."[7] *Id.* at 5 (displaying BIA's decision).

According to the BIA, the IJ was not required to reach the "alternatives to detention" issue because she had determined that Mr. Higiro posed a danger to the community. But, to quote the First Circuit, this is to "put the cart before the horse." *Brito*, 22 F.4th at 254. Had she looked to alternatives to detention *first*, the IJ in Mr. Higiro's case "might well have reached [a] different decision[] as to whether to release the petitioner[] on bond." *Id.* at 255.

Satisfied that Mr. Higiro has alleged traceability and redressability, as well as injury in fact, *see id.* at 253 ("It is too late in the day to dispute that an individual

---

[7] For this contention, the BIA cited to its own decision in *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009). ECF No. 1-1 at 5.

12

alleging that his detention resulted from constitutionally defective procedures has suffered an injury in fact sufficient to support Article III standing so as to challenge those procedures."), the Court concludes that Mr. Higiro has standing to bring the type of claim that he asserts.

### b. Exhaustion

The *Brito* court next addressed whether the petitioners were required to exhaust their administrative remedies before pressing their "alternatives to detention" claim in federal court. 22 F.4th at 255-57. There is no statute requiring exhaustion under these circumstances. *Id.* at 255-56. Rather, "the more permissive realm of common-law exhaustion" governs in this type of situation. *Id.* at 256 (citing *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174-75 (1st Cir. 2016)). Notably, the First Circuit found the claim to be unexhausted where "none of the petitioners remain[ed] detained" and where the petitioners failed "to ask their own IJs to consider alternatives to detention." *Id.*

Unlike the petitioners in *Brito*, Mr. Higiro has arguably exhausted all the administrative remedies available to him. Not only did he raise his "alternatives to detention" claim before the IJ, *see* ECF No. 1-1 at 73-74, but he also raised this claim on appeal to the BIA. *See id.* at 22, 28, 36-37. The IJ did not address this claim, and the BIA dismissed it outright. Perhaps more importantly, Mr. Higiro remains in ICE custody and is nearing his thirteenth month of detention. ECF No. 1 at 2 ("Petitioner has been in ICE custody since February 20, 2025.").

13

Even if Mr. Higiro's claim were found to be "unexhausted," the Court may find exhaustion to be unnecessary where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *Brito*, 22 F.4th at 256 (quoting *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997)); *see also Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) ("[E]xhaustion might not be required if [the petitioner] were challenging her incarceration ... or the ongoing deprivation of some other liberty interest."). And, of course, the loss of liberty endured by a noncitizen in ICE custody is a "severe form of irreparable injury." *Garcia*, 2025 WL 3466312, at *6 (quoting *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005)); *see also Tomas Elias v. Hyde*, No. 25-cv-540-JJM-AEM, 2025 WL 3004437, at *3 (D.R.I. Oct. 27, 2025).

Thus, the Court is also convinced that exhaustion does not foreclose its consideration of Mr. Higiro's claim.

### 3. The Merits of Mr. Higiro's Due Process Claim

The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It is well established that due process protections extend to all individuals in the United States, regardless of citizenship status. *Id.* at 693; *see also Reno v. Flores*, 507 U.S. 292, 306 (1993).

14

Turning to the substance of Mr. Higiro's due process claim, this Court need not write on a blank slate. As mentioned, several other courts within the First Circuit have required IJs to consider alternatives to detention as part of their assessment of danger and flight risk at bond hearings. *See Doe v. Tompkins*, No. 18-12266, 2019 WL 8437191, at *2 (D. Mass. Feb. 12, 2019), *aff'd*, 11 F.4th 1 (1st Cir. 2021) ("The immigration court shall properly allocate the burden of proof and consider alternative methods to ensure the safety of the community and Doe's future appearances like GPS monitoring."); *cf. Reid v. Donelan*, 390 F. Supp. 3d 201, 225 (D. Mass. 2019), *aff'd in part, vacated in part*, 17 F.4th 1 (1st Cir. 2021) (requiring IJs in Section 1226(c) cases to consider both a noncitizen's "ability to pay in setting the bond amount and alternative conditions of release").

Going one step further, Judge Patti B. Saris held in a 2021 decision that, with respect to noncitizens detained under Section 1226(a), due process required the IJs conducting their bond hearings to have considered both the detainees' "ability to pay in setting the bond amount and alternative conditions of release, such as GPS monitoring, that reasonably assure the safety of the community and the [detainee's] future appearances." *Brito v. Barr*, 415 F. Supp. 3d 258, 267 (D. Mass. 2021), *aff'd in part, vacated in part sub nom., Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021). More recently, Judge Angel Kelley held the same. *See Costa v. McDonald*, No. 25-cv-13469-AK, 2026 WL 371198, at *3 (D. Mass. Feb. 10, 2026) ("[T]he Immigration Judge's failure to consider whether alternatives to detention or other less restrictive means

15

could address the risks of danger posed by Petitioner to the community was constitutionally deficient.").

Indeed, courts in other circuits have also recognized this due process requirement. *See, e.g., Hernandez*, 872 F.3d at 1000 (finding that plaintiffs were likely to succeed in their argument that due process requires IJs to consider detainees' financial circumstances and alternative conditions of release); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 242 (W.D.N.Y. 2019) (holding that IJ was required to consider "alternatives before resorting to detention" at due process hearing where the Government bore the burden of proving flight risk and dangerousness); *Ousman D. v. Decker*, No. 20-9646 (JMV), 2020 WL 5587441, at *4 (D.N.J. Sept. 18, 2020) ("Because there is no evidence that the IJ considered less restrictive alternatives to detention – such as a release subject to specific conditions, including regular reporting and/or monitoring – the Court finds that the bond hearing failed to comply with due process."); *Roman v. Decker*, No. 20-cv-6752 (AJN), 2020 WL 5743522, at *4 (S.D.N.Y. Sept. 25, 2020) ("[T]he Due Process Clause requires that the IJ must consider alternative conditions of release and the detainee's ability to pay before making an ultimate determination.").

Guided by these decisions, the Court therefore agrees with Mr. Higiro that due process required the IJ in his case to have considered alternatives to detention *before* denying him release on bond, and that the IJ's failure to make this consideration rendered her bond determination "legally insufficient." ECF No. 1 at 8-10. It is not difficult to see why. Detention must bear a "reasonable relation" to the purpose for

16

which the individual is detained. *See Zadvydas*, 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).  The Supreme Court has recognized that two governmental interests are legitimately advanced by detention in the immigration context: (1) ensuring the appearance of the noncitizen at future immigration proceedings; and (2) preventing danger to the community.  *Id.*  But, with respect to regulations that burden other constitutional rights, the Supreme Court has *also* stated that "[w]hen a plausible, less restrictive alternative is offered … it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000).

Thus, requiring an IJ to consider alternatives to detention at a bond hearing helps to ensure that detention is not arbitrarily imposed and that it bears a reasonable relation to the Government's interests.  As Judge Kelley persuasively put it, "[i]t is possible in this context that a method short of burdening Petitioner's liberty would suffice to address any concerns of danger, and due process requires the Government to at least address why those alternatives might be inadequate." *Costa*, 2026 WL 371198, at *3.  Indeed, "non-incarceratory measures, such as home detention, electronic monitoring,[8] and so forth, could mitigate any danger that Petitioner pose[s] to the safety of the community."  *Fernandez Aguirre*, 2019 WL 4511933, at *5; *see also Brito*, 415 F. Supp. 3d at 267.  "[R]easonable and appropriate conditions of supervision," such as "in-person reporting" to ICE, may also serve this

---

[8] Of course, the Court recognizes that electronic monitoring is not without its own unique problems. *See generally* Mary Holper, *Immigration E-Carceration: A Faustian Bargain*, 59 San Diego L. Rev. 1 (2022).

17

purpose. *Hechavarria*, 358 F. Supp. 3d at 243-44 & n.13; *see also Ousman D.*, 2020 WL 5587441, at *4.

Accordingly, the Court ORDERS the Government to provide Mr. Higiro with a new bond hearing, during which the Government must show that alternatives to detention to ensure the safety of the community would be inadequate. *See Costa*, 2026 WL 371198, at *4 (ordering similar relief). During the bond hearing, the IJ shall consider whether alternatives to detention are warranted *before* making any determination as to flight risk or dangerousness. *See Brito*, 22 F.4th at 254 (noting that to require otherwise would be "to put the cart before the horse").[9]

## IV.  CONCLUSION

For the reasons stated, Mr. Higiro's habeas petition is GRANTED. ECF No. 1. The Government is hereby ORDERED to provide Mr. Higiro with a bond hearing before an IJ under 8 U.S.C. § 1226(a) within ten (10) days, during which the Government must show that alternatives to detention to ensure the safety of the community would be inadequate. The IJ shall meaningfully consider alternatives to detention *before* making any determination as to flight risk or dangerousness. The Government shall also file a status report within five (5) days of Mr. Higiro's bond

---

[9] The Court need not reach Mr. Higiro's alternative "prolonged detention" claim. *See* ECF No. 1 at 7-8. Here, the Court is already ordering a new bond hearing, and as relevant to Mr. Higiro's other claim, "[t]he remedy for a prolonged detention is a bond hearing before an immigration judge at which the government bears the burden of proving that the [noncitizen] should not be released on bond." *Mayancela*, 2025 WL 3215638, at *7 (quoting *Fils-Aime v. FCI Berlin, Warden*, 808 F. Supp. 3d 218, 226 (D.N.H. 2025)).

hearing, stating whether he has been granted bond and, if his request for bond was denied, the reason for that denial.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

March 13, 2026

19