UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| FRANK HIGIRO, <br>　　　Petitioner, <br><br> v. <br><br> MICHAEL NESSINGER, *Warden, Wyatt Detention Facility*; DAVID WESLING, *Field Office Director, U.S. Immigration and Customs Enforcement, New England Field Office*; TODD M. LYONS, *Director, U.S. Immigration and Customs Enforcement*; MARKWAYNE MULLIN,[1] *Secretary of the U.S. Department of Homeland Security*; and TODD BLANCHE,[2] *Acting Attorney General*, <br>　　　Respondents. | No. 26-cv-105-JJM-AEM |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief Judge United States District Court.

　　Frank Higiro is currently in the custody of Immigration and Customs Enforcement ("ICE") at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island (the "Wyatt"). ECF No. 1. He previously filed a petition for a writ of habeas corpus in which he challenged the constitutionality of his initial bond hearing

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Markwayne Mullin has been substituted for Kristi Noem as Secretary of the Department of Homeland Security in this action.

[2] Pursuant to Fed. R. Civ. P. 25(d), Todd Blanche has been substituted for Pamela J. Bondi as Acting Attorney General.

at which the presiding immigration judge ("IJ") failed to consider alternatives to detention before denying his request for release on bond. *Id.* at 8-10.

Finding that Mr. Higiro's due process rights had been violated, the Court granted Mr. Higiro's petition and ordered the Government to provide him with a new bond hearing at which the IJ was to meaningfully consider alternatives to detention before making any determination as to bond. ECF No. 8 at 16-18; *see also Higiro v. Nessinger*, No. 26-cv-105-JJM-AEM, 2026 WL 710297, at *7-8 (D.R.I. Mar. 13, 2026).

Now pending before the Court is Mr. Higiro's Amended Motion to Enforce Judgment.[3] ECF No. 12. He argues that the second bond hearing he was provided was also deficient because it failed to comply with the Court's order. *Id.* at 2. The Government objects to Mr. Higiro's motion and asserts that it has already satisfied the Court's order. ECF No. 14 at 1.

For the reasons stated below, the Court agrees with the Government. As such, the Court DENIES Mr. Higiro's Motion.

## I.   BACKGROUND

The Court's earlier order set forth the factual and procedural background of this case in detail. *See Higiro*, 2026 WL 710297, at *1-2. Nevertheless, the Court will briefly recount a few facts relevant to this motion.

Mr. Higiro is a citizen from Rwanda who came to the United States on a student visa in 2015. *Higiro*, 2026 WL 710297, at *1. Since 2023, Mr. Higiro has had

---

[3] Mr. Higiro filed an initial Motion to Enforce Judgment, *see* ECF No. 11, but that motion was amended shortly thereafter.

three encounters with law enforcement: (1) he was arrested in Maine for the charge of operating under the influence ("OUI"), but that charge was later dismissed; (2) he was arrested in New Hampshire and charged with the offense of prohibited sales of alcohol to a minor, but that charge was also later dismissed; and (3) he was arrested in Maine again and charged with assault, criminal restraint, and furnishing liquor to a minor, but this case was later closed after police officers were unable to reach the alleged victim. *See id.* at 1-2.

ICE officers took Mr. Higiro into custody on February 20, 2025, charging him with having failed to maintain the terms or conditions of his student visa. *Id.* at 2. Since then, he has remained in detention at the Wyatt for nearly fifteen months. *Id.* He was provided with an initial bond hearing, but the IJ in his case denied bond after finding Mr. Higiro to pose a danger to the community due to his three recent encounters with law enforcement. *Id.*

Mr. Higiro later filed a habeas petition in which he argued, among other things, that the IJ who conducted his bond hearing violated his due process rights by failing to consider alternatives to detention before denying his request for release on bond. ECF No. 1 at 8-10. The Court agreed with Mr. Higiro and granted his petition. *See Higiro*, 2026 WL 710297, at *7-8. In its order, the Court directed the Government to take the following actions:

> The Government is hereby ORDERED to provide Mr. Higiro with a bond hearing before an IJ under 8 U.S.C. § 1226(a) within ten (10) days, during which the Government must show that alternatives to detention to ensure the safety of the community would be inadequate. The IJ shall meaningfully consider alternatives to detention *before* making any determination as to flight risk or dangerousness.

3

*Higiro*, 2026 WL 710297, at *8.  The Government thereafter provided Mr. Higiro with another bond hearing before the Chelmsford Immigration Court.  ECF No. 12 at 3.  In the present motion, Mr. Higiro argues that his second bond hearing was also deficient, and he asks the Court to enforce its prior order.  *Id.* at 1.

## II.   STANDARD OF REVIEW

"As various courts of appeals have recognized, a district court retains jurisdiction[4] to ensure compliance with its earlier order granting a petitioner habeas relief."  *España v. Nessinger*, No. 26-cv-014-JJM-PAS, 2026 WL 821788, at *6 (D.R.I. Mar. 25, 2025) (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011)); *see also Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010) ("[A] federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, [and] the court has the authority to see that its judgment is fully effectuated."); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("[C]ourts have inherent power to enforce compliance with their lawful orders . . . .").  The "district court has the authority to determine whether all of the conditions contained in its previous habeas order were followed—that is, whether the petitioner received the due process to which

---

[4] The Government claims that 8 U.S.C. § 1226(e) deprives the Court of jurisdiction to review an IJ's bond determination.  ECF No. 14 at 4-6.  As this Court has found repeatedly, Section 1226(e) does not deprive it of jurisdiction over "constitutional claims or questions of law."  *See, e.g.*, *Garcia v. Hyde*, 817 F. Supp. 3d 112, 124 (D.R.I. 2025); *Mavungo-Raymond v. Nessinger*, No. 26-cv-013-JJM-AEM, 2026 WL 161358, at *8 (D.R.I. Jan. 21, 2026); *Picado v. Hyde*, No. 26-cv-065-JJM-PAS, 2026 WL 352691, at *4-5 (D.R.I. Feb. 9, 2026); *Higiro*, 2026 WL 710297, at *4; *España*, 2026 WL 821788, at *4-6.  Because Mr. Higiro alleges a due process violation, *see* ECF No. 12 at 5, Section 1226(e) does not preclude review of the IJ's bond decision.

they were entitled." *España*, 2026 WL 821788, at *6 (citing *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 235-36 (W.D.N.Y. 2019); *Mathon v. Searls*, 623 F. Supp. 3d 203, 213 (W.D.N.Y. 2022)).

"[I]n cases involving challenges to IJs' bond determinations, federal courts retain 'habeas jurisdiction over constitutional claims or questions of law.'" *Picado v. Hyde*, No. 26-cv-065-JJM-PAS, 2026 WL 352691, at *4-5 (D.R.I. Feb. 9, 2026) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017)). "Thus, to obtain habeas relief, the noncitizen must show that the IJ 'failed to place the burden of proof on the Government' to either show dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence." *Id.* (quoting *Mayancela Mayancela v. FCI Berlin, Warden*, No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *5 (D.N.H. Nov. 18, 2025)). "The noncitizen can make this showing either by: (1) demonstrating that the IJ erred because the evidence itself could not, as a matter of law, have supported the IJ's decision to deny bond; or (2) pointing to the IJ's opinion itself and showing that the IJ failed to apply the correct standard to the facts." *Id.* (citing *Garcia v. Hyde*, 817 F. Supp. 3d 112, 126 (D.R.I. 2025)).

## III.   DISCUSSION

The IJ in Mr. Higiro's case ultimately denied bond after finding that alternatives to detention would be inadequate to address concerns of danger posed by Mr. Higiro. ECF No. 12 at 1. Mr. Higiro contends that the "hearing did not comply with this Court's order because the [IJ] did not meaningfully consider alternatives to detention before finding danger." *Id.* at 7. He also claims that the IJ's renewed

5

dangerousness determination was "legally insufficient because it rests on disputed, unadjudicated police reports without the reasoned explanation required by due process." *Id.* at 9; *see also* ECF No. 15 at 7-8. The Government disagrees with both contentions and asserts that it has fully complied with the Court's order. ECF No. 14 at 1. After reviewing the record, including the exhibits submitted to the IJ and an audio recording of the bond hearing itself,[5] the Court agrees with the Government on both fronts.

### A.    The IJ's Consideration of Alternatives to Detention

Over the course of almost an hour, the IJ conducted a bond hearing at which she carefully considered a range of alternatives to detention proposed by Mr. Higiro's attorney, Connor Futch ("CF"), and Mr. Higiro himself ("FH"). These alternatives to detention included: (1) GPS ankle monitoring; (2) SmartLINK monitoring;[6] (3) telephonic reporting; (4) third-party supervision/observation of Mr. Higiro; (5) regular check-ins with ICE; (6) enrollment in ICE's Intensive Supervision Appearance Program ("ISAP");[7] and (7) home detention.    Bond Hearing, at 10:37-11:30, Chelmsford Immigr. Ct. (recorded Mar. 19, 2026) (hereinafter "Bond Hearing").

---

[5] The Government submitted an audio recording of the bond hearing pursuant to this Court's text order. *See* Text Order (Mar. 27, 2026); ECF No. 13. The Court has listened to the bond hearing in its entirety and quotes relevant portions of it throughout this Order.

[6] SmartLINK is a phone application that uses biometric information, including facial comparison and recognition, to monitor, track, and surveil noncitizens in immigration removal proceedings. *See* Sarah Sherman-Stokes, *Immigration Detention Abolition and the Violence of Digital Cages*, 95 U. Colo. L. Rev. 219, 237 (2024).

[7] ISAP is an alternative to detention program that is maintained by ICE's Enforcement and Removal Operations ("ERO") department. *See* Isaí Estévez, Note,

The transcript reflects that the IJ weighed several of these alternatives to detention and considered whether Mr. Higiro would be a suitable candidate for any of them given his particular background and criminal history.

IJ: Counsel, does GPS monitoring prevent [Mr. Higiro] from being a danger of drinking and driving?

***

CF: "[S]peaking to that, an ankle monitoring system, yes, I'm not entirely sure how that would prevent him from entering a car intoxicated and driving. However, with the ankle monitors, I know it is specifically tied to a region around a certain point. If it would see fit and if it truly is a concern that [Mr. Higiro], you know, potentially get into a car and drive, I would ask then if the ankle monitor system be at least limited to his house. That seems to be a very fruitful alternative to the situation.

IJ: So, are you suggesting home detention, that [Mr. Higiro] would not be able to leave his house? Is that your proposal?

CF: Yes.

IJ: Where would he live?

CF: At his house with his wife and children.

***

IJ: Alright, counsel, was [Mr. Higiro] working or would you expect him to work upon his release? Did he have a job prior to his detention?

CF: Prior to his detention, yes, I believe he did have a job. He would like to continue working after he is released.

IJ: What was his job? How would he do that if he were detained at home?

CF: My client, would you like to respond?

IJ: Go ahead briefly, sir.

FH: Thank you, your honor. And again, it's whatever the court sees fit today, but I'd really like to be able to go to work. My wife and I own a small business. We take care of the elderly in Maine. We've been doing this small business for over two years now. We go to homes where elderly people live and provide services to

---

*A Case for Community-Based Alternatives to Immigration Detention*, 64 Ariz. L. Rev. 1185, 1196 (2022). The program consists of varying degrees of supervision monitoring options, and ERO officers determine the type and manner of monitoring that is appropriate for each participant, which can include GPS monitoring, telephonic reporting, SmartLINK monitoring, and/or office or home visits. *Id.* at 1197.

7

> them.  And so, I'd like to do that, your honor.  But also, not to mention, that's where we get the money to pay for our mortgage and to take our children to school, and my wife has been struggling without my assistance, and so, I think a home confinement, again, if the court sees fit that that's the only option, then I'll take it, but I'd really plead with the courts today that I would have conditions  that would enable me to provide for my family.
>
> **IJ:**   Counsel for [Mr. Higiro], when you said "third party watch him," who did you have in mind?
>
> **CF:**   It could be an alternative, such as community members as well. He's heavily involved within his church community.  Or excuse me, his religious community.  Primarily ICE check-ins.  A third-party watch system, such as that.  Those are the two main alternatives as a third party essentially watching him that we would be looking for.

Bond Hearing, at 28:22-28:28; *id.* at 29:46-30-34:23.

The IJ then heard arguments from the attorney representing the Department of Homeland Security ("DHS") as to why these alternatives to detention would be inadequate in Mr. Higiro's case:

> **IJ:**   [DHS], can you speak to [DHS's] position on the suggestion that [Mr. Higiro] have a GPS monitor that would require home confinement or possibly home confinement with an allowance to go to a workplace or various workplaces based on his description of his employment and this third-party option idea?
>
> **DHS:** Your honor, the alternatives to detention, be they third-party watch, ankle monitor, etc., may mitigate potential flight risk, but they do not, in [DHS's] opinion, mitigate any potential danger risk.  To your question about the DUI, and whether any of those alternatives to detention options could prevent that, clearly the answer is no.  Additionally, [Mr. Higiro's] other arrests were for threats and assault, including sexual assault.  Clearly such monitoring would not be able to mitigate other instances of that. Alternatives to detention cannot mitigate danger.[8]

---

[8] The DHS attorney also cited 8 U.S.C. § 1226(c) for the general proposition that, "where a finding of potential dangerousness to the community is found, that bond is unavailable, it renders the [petitioner] ineligible for bond."  Bond Hearing, at 35:41-35:55; *see also id.* at 37:11-37:51 (DHS) ("[U]nder INA 236(c), it requires mandatory detention for those deemed to be a danger to the community.").

Bond Hearing, at 34-28-35:36.

Ultimately, the IJ determined that Mr. Higiro was not a suitable candidate for any alternative to detention program.  She explained as follows:

> **IJ:** The court believes it has meaningfully, in this case, considered the alternatives to detention here.  The court is not persuaded that the alternative to detention of a GPS monitor, even if there were a condition of home confinement in conjunction with GPS monitoring, would be sufficient in this case because of the underlying facts in the dismissed or annulled or essentially dropped charges.  The court recognizes these are not convictions, and that [Mr. Higiro] currently has no pending charges.  Nevertheless, the court is able to consider the police reports and the evidence in the record that the underlying facts did or may have occurred in fact.
>
> ***
>
> **IJ:** And the court will note that the fact that, at least a significant portion of these events are related to facts or alleged conduct at least in [Mr. Higiro's] own home, specifically negates the argument that a GPS monitor or home confinement in this case would be effective to essentially negate [Mr. Higiro's] danger to the community.  He could certainly provide alcohol to minors in his own home, and the nature and the specific fact that these events actually, or at least some of these events, allegedly occurred in his own apartment tends to suggest the GPS monitor here, third-party watch, telephonic reporting, regular check-ins . . ., or intensive supervision would not be sufficient.

Bond Hearing, at 41:54-43:00; *id.* at 46:46-47:43.

---

It is important to note, however, that Section 1226(c) is not relevant to this Court or the immigration court's analysis.  That provision of the INA, which makes detention mandatory, specifically "applies to noncitizens convicted of specified crimes," such as those convicted of an "aggravated felony." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 35 (1st Cir. 2021); *see Demore v. Kim*, 538 U.S. 510, 517-18 (2003).  Mr. Higiro has not been convicted of an "aggravated felony," as is defined in 8 U.S.C. § 1101(a)(43).  That is why, correctly so, the IJ did not rely on Section 1226(c) in determining that Mr. Higiro could not be released on bond.

It is clear from the record that the IJ meaningfully considered alternatives to detention, as the Court directed her to in its prior order.  The questions posed by the IJ to each party were thoughtful, and they demonstrated that the IJ was not simply rubber-stamping DHS's decision to pursue Mr. Higiro's continued detention.  Rather, the IJ undeniably engaged in reasoned analysis that led her to conclude that Mr. Higiro was not a suitable candidate for an alternative to detention program given his background and criminal history.

Even if this Court were to "have reached a different conclusion regarding the possibility of suitable alternatives to detention, 'it is not this Court's role to engage in a re-weighing of the evidence considered by the IJ.'"  *Tucker v. Searls*, No. 22-CV-608-LJV, 2023 WL 3267085, at *5 (W.D.N.Y. May 5, 2023) (quoting *Adejola v. Barr*, 439 F. Supp. 3d 120, 130 (W.D.N.Y. 2020)); *see also Vides v. Searls*, No. 6:20-cv-06293 EAW, 2021 WL 6846277, at *5 (W.D.N.Y. May 13, 2021) *Sheriff v. Searls*, No. 21-cv-6073-FPG, 2021 WL 6797495, at *7 (W.D.N.Y. Aug. 16, 2021).  Accordingly, the Court finds no legal error in the IJ's conclusion.

### B.    The IJ's Renewed Dangerousness Determination

Moreover, the Court discerns no legal error in the IJ's renewed dangerousness determination.  To determine whether a noncitizen poses a danger to the community, the Board of Immigration Appeals ("BIA") instructs IJs to weigh nine factors.  *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006), *abrogated on other grounds*, *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).  The IJ "may" consider "any or all of the following": (1) whether the noncitizen has a fixed address in the United States;

10

(2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, particularly those which could confer immigration benefits on the noncitizen; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any previous attempts to escape from authorities or avoid prosecution; and (9) the noncitizen's manner of entry to the United States. *See id.*

Here, in making her dangerousness determination, the IJ gave considerable weight to Mr. Higiro's criminal history, observing that he "has had three encounters with police since 2023: one conviction for disorderly conduct, an OUI charge, and pending criminal investigation for assault, criminal restraint, and furnishing a place for minors to consume alcohol." Bond Hearing, at 43:25-43:42.[9] The IJ acknowledged that "there has been a significant change in circumstances in that charges were dismissed or annulled or essentially are no longer pending, and that [Mr. Higiro] has no longer any pending charges." *Id.* at 45:13-45:29. Nevertheless, the IJ reasoned that, "despite the fact that the charges were no longer being pursued, the court here is still able to consider the underlying facts and evidence, including any police reports and evidence," and that she found this information to be "reliable and corroborated[.]"

---

[9] The IJ found persuasive and quoted directly from the previous IJ's memorandum of decision in which that IJ also found Mr. Higiro to pose a danger to the community. *See* ECF No. 1-1 at 56.

*Id.* at 45:38-46:01. As such, the IJ found Mr. Higiro to pose a danger to the community and denied his renewed request for release on bond.

Mr. Higiro primarily takes issue with the IJ's reliance on "police reports and unadjudicated allegations," arguing that they are "uncorroborated" and "cannot be given substantial weight . . . without conviction or corroboration." ECF No. 12 at 10. It is important to note, however, that IJs are "are not limited to considering *only* criminal convictions in assessing whether [a noncitizen] is a danger to the community." *Matter of Guerra*, 24 I&N Dec. at 40 (emphasis in original). The IJ is permitted to consider "[a]ny evidence in the record that is probative and specific," including "evidence of criminal activity." *Id.* at 41.

It is permissible, for example, for an IJ to rely on a police report—even if it does not result in a criminal conviction—so long as the allegations contained therein are supported by corroborating evidence. *See Rosa v. Garland*, 114 F.4th 1, 17 (1st Cir. 2024) (quoting *In re Arreguin de Rodriguez*, 21 I&N Dec. 38, 42 (BIA 1995)). Indeed, this Court has now held several times that an uncorroborated police report cannot, by itself, establish dangerousness as a matter of law. *See, e.g., Picado*, 2026 WL 352691, at *7 ("Without more, an uncorroborated police report is simply not clear and convincing evidence sufficient for a finding of dangerousness."); *Rosa Pineda v. Nessinger*, No. 25-cv-522-MSM-AEM, 2025 WL 3267328, at *1 (D.R.I. Nov. 24, 2025) ("[A]n uncorroborated police report cannot, alone, be 'clear and convincing evidence sufficient for a finding of dangerousness.'"); *Alvarez Puerta v. Nessinger*, No. 25-cv-108-JJM-AEM, slip op. at 1 (D.R.I. June 17, 2025) (finding that an

12

uncorroborated police report was not clear and convincing evidence sufficient for a finding of dangerousness); *cf. España*, 2026 WL 821788, at *11-13 (finding an I-213 form to be "nothing more than a police report created by a DHS officer" and concluding that it was legally erroneous for an IJ to have relied on it given its multiple inconsistencies and its lack of corroborating evidence).

But the IJ in Mr. Higiro's case relied on much more than a police report. In fact, she made reference to multiple police reports that described the three different encounters Mr. Higiro has had with law enforcement since 2023. *See* Bond Hearing, at 47:53-48:38. What is more, she found these reports to be corroborated and, as such, sufficiently reliable given the additional evidence contained in the record before her, including an interview with the alleged assault victim, as well as photographs and video footage supporting the charges brought against Mr. Higiro. *Id.* at 49:01-49:20.

The IJ acknowledged that each of the charges described in the police reports had either been dismissed by a court or dropped by the police, but she nevertheless concluded that the underlying facts "show[ed] a concerning and escalating pattern of [Mr. Higiro] engaging in dangerous and violent actions to others." *Id.* at 47:49-48:04. The IJ also emphasized "the recency and number of encounters with police since 2023, involving very serious potential actions that clearly relate to danger to the community." *Id.* at 48:06-48:30.

Based on the totality of the evidence before her, the Court cannot conclude that the IJ's dangerousness determination was "legally insufficient." Indeed, the "logical underpinnings" surrounding the IJ's decision to deny bond are quite clear from her

13

oral order. *Cf. Mayancela Mayancela v. FCI Berlin, Warden*, No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *6 (D.N.H. Nov. 18, 2025) (reaching same conclusion with respect to the IJ's "flight risk" determination based on review of IJ's memorandum of decision); *Lopez-Gomez v. Bondi*, 154 F.4th 1, 4 (1st Cir. 2025) ("[T]he BIA need not spell out every last detail of its reasoning where the logical underpinnings are clear from the record . . . .").

The IJ gave considerable significance to Mr. Higiro's multiple encounters with law enforcement since 2023. In doing so, the IJ evaluated perhaps "'[t]he *Guerra* factor most pertinent to assessing dangerousness,'" which is Mr. Higiro's "'criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses.'" *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (quoting *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) (quoting *Guerra*, 24 I&N Dec. at 40)). Even though Mr. Higiro's criminal charges were later dismissed or dropped, the underlying facts to support those charges were sufficiently corroborated by "probative and specific" evidence of criminal activity in the record. *See Matter of Guerra*, 24 I&N Dec. at 40; *In re Arreguin de Rodriguez*, 21 I&N Dec. at 42.

Other cases in which this Court has found the IJ's bond determination to be "legally insufficient" do not counsel in favor of reaching a different result here. For instance, in *Garcia v. Hyde*, an IJ found the petitioner to pose a flight risk based solely on a Guatemalan arrest warrant, but the hearing transcript revealed that the IJ did not actually know what the alleged charges against the petitioner were. 817

14

F. Supp. 3d at 127-29. That was properly considered legal error by the IJ. Additionally, in *Picado v. Hyde*, as well as in *Alvarez Puerta v. Nessinger*, the Court held that IJs could not make findings of dangerousness based solely on uncorroborated police reports because that too would be considered legal error. *Picado*, 2026 WL 352691, at *6-7; *Alvarez Puerta*, slip op. at 1. In Mr. Higiro's case, however, the evidence upon which the IJ based her dangerousness determination is considerably more reliable, probative, and specific than that in *Garcia*, *Picado*, or *Alvarez Puerta*.

The Court recognizes that Mr. Higiro has now spent nearly fifteen months in ICE detention. But ultimately, "[t]he question before this [C]ourt is not whether it would have ordered [Mr. Higiro's] release on bond had it been in the IJ's position . . . ." *Acero v. FCI Berlin, Acting Warden*, No. 26-cv-159-LM-AJ, --- F. Supp. 3d ----, 2026 WL 821896, at *4 (D.N.H. Mar. 25, 2026). Instead, "the [C]ourt may only consider whether the evidence submitted at the bond hearing was insufficient as a matter of law" to find that Mr. Higiro posed a danger to the community by clear and convincing evidence. *Id.*; *see Hernandez-Lara*, 10 F.4th at 41. Here, because a reasonable jurist could have found, based on Mr. Higiro's particular background and criminal history, that he posed a danger to the community by clear and convincing evidence, the Court is compelled to find that the IJ's decision to deny bond was not legally insufficient.

## IV.    CONCLUSION

For the reasons stated above, the Court DENIES Mr. Higiro's Motion to Enforce. ECF No. 12.

15

IT IS SO ORDERED.


s/John J. McConnell, Jr.

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court


May 13, 2026